UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

JULIE A. SU, Acting Secretary of Labor,      :
United States Department of Labor,         **COMPLAINT**

                                          :

                   Plaintiff,      :  Civil Action No. 24-cv-6645
           v.

                                          :

WHITE NOISE COFFEE I CORP. d/b/a WHITE
NOISE COFFEE CO., WHITE NOISE COFFEE 2     :
CORP. d/b/a WHITE NOISE COFFEE CO., MILK
UNDER CAFE INC. d/b/a WHITE NOISE COFFEE  :
CO., SU HYUNG KIM a/k/a VANESA KIM,
Individually, and HAN FLANAGAN, Individually,  :

                                          :

             Defendants.        :

----------------------------------------------------------------

      1.      Plaintiff, Julie A. Su, Acting Secretary of Labor, United States Department of Labor (the "Acting Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) (the "Act" or the "FLSA"), alleging that Defendants White Noise Coffee I Corp. d/b/a White Noise Coffee Co., White Noise Coffee 2 Corp. d/b/a White Noise Coffee Co., Milk Under Cafe Inc. d/b/a White Noise Coffee Co., Su Hyung Kim a/k/a Vanesa Kim, and Han Flanagan (collectively, "Defendants") violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages for employees; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

      2.      From at least September 20, 2021 through at least May 2023 and likely to the present (the "relevant time period"), Defendants operated a chain of coffee shops in New York City under the brand name White Noise Coffee Co. as a single employer and assigned their

employees to work upwards of fifty hours per week at their coffee shop locations. However, in flagrant violation of the Act, Defendants willfully deprived their employees of their rightfully owed wages by not paying overtime premiums for hours worked over forty in a week, most notably when employees worked at multiple locations. In furtherance of their violations of the Act, Defendants failed to keep complete and accurate records, including of employees' hours and pay, and failed to post and keep a notice explaining the minimum wage and overtime requirements of the Act in conspicuous places in every establishment where such employees were employed.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

4.      Venue for this action lies in the United States District Court for the Eastern District of New York because a substantial part of the events or omissions giving rise to the claims occurred in this District. 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### THE PARTIES

#### *Plaintiff*

5.      Plaintiff, JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

#### *The Corporate Defendants*

6.      Defendant WHITE NOISE COFFEE I CORP. doing business as WHITE NOISE COFFEE CO. is a company organized under the laws of the State of New York, having its principal executive office at 71 Smith Street, Brooklyn, New York 11201.

7.     Defendant WHITE NOISE COFFEE 2 CORP. doing business as WHITE NOISE COFFEE CO. is a company organized under the laws of the State of New York, having its principal executive office at 57 Smith Street, Brooklyn, New York 11201 and the address of its Chief Executive Officer at 829 11th Avenue, New York, NY 10011.

8.     Defendant MILK UNDER CAFE INC. doing business as WHITE NOISE COFFEE CO. is a company organized under the laws of the State of New York, with a registered address for service of process at 41-02 162nd Street, Flushing, New York 11358.

9.     These three companies, collectively, are the "Corporate Defendants."

10.    Defendants operate a chain of specialty coffee shops under the brand name White Noise Coffee Co.

11.    Defendants currently operate one location in the White Noise Coffee Co. chain of coffee shops at 57 Smith Street, Brooklyn, New York 11201, in the Boerum Hill neighborhood of Brooklyn (the "Brooklyn location"), and have done so throughout the relevant time period.

12.    Defendants currently operate another location in the White Noise Coffee Co. chain of coffee shops at 829 11th Avenue, New York, New York 10011, in the Hell's Kitchen neighborhood of Manhattan (the "Manhattan location"), and have done so since on or about March 23, 2022.

13.    Defendants previously operated another location in the White Noise Coffee Co. chain of coffee shops at 41-02 162nd Street, Flushing, New York 11358, in the Flushing neighborhood of Queens (the "Queens location"), during the relevant time period until on or about June 1, 2023, when Defendants closed the Queens location.

*The Individual Defendants*

14.    Defendant SU HYUNG KIM a/k/a VANESA KIM, an individual, owns at least one

of the Corporate Defendants.

15.     Defendant Kim is and was during the relevant time period the Chief Executive Officer of at least two of the Corporate Defendants.

16.     Defendant Kim resides in Queens, New York, within the jurisdiction of this Court.

17.     Defendant HAN FLANAGAN, an individual, is married to Defendant Kim.

18.     Defendant Flanagan is and was during the relevant time period the financial manager of the Corporate Defendants.

19.     Defendant Flanagan resides in Queens, New York, within the jurisdiction of this Court.

<strong>THE DEFENDANTS OPERATE AS A SINGLE, INTEGRATED EMPLOYER</strong>

<em>The Corporate Defendants Jointly and Collectively<br>Employ White Noise Coffee Co.'s Employees</em>

20.     Defendants operate as a single employer and have done so throughout the relevant time period.

21.     Together, Defendants employed the same employees at multiple coffee shop locations during the relevant time period.

22.     During the relevant time period, Defendants regularly assigned at least some White Noise Coffee Co. employees to work at multiple White Noise Coffee Co. locations in the same workweek.

23.     During the relevant time period, Defendants subjected employees at all of the White Noise Coffee Co. locations to the same employment policies, as described herein.

24.     During the relevant time period, Defendants used the same hiring process to hire employees for all White Noise Coffee Co. locations.

25.     For example, in a May 2, 2022 Instagram post, the White Noise Coffee Co.

4

Instagram account stated, "White Noise is currently hiring Baristas for all locations!" The post listed the Queens location, the Brooklyn location, and the Manhattan location as White Noise Coffee's locations and instructed applicants to apply via direct message or to submit resumes to a single email address.

26.     During the relevant time period, Defendants used an application called "When I Work" to provide employees with their work schedules for all three locations.

27.     Specifically, Defendant Kim input employee schedules into the "When I Work" application for all locations, including schedules that required employees to work at more than one White Noise Coffee Co. location in a single workweek.

28.     During the relevant time period, Defendants used the same timekeeping system for employees at all White Noise Coffee Co. locations.

29.     During the relevant time period, Defendants used the same payroll system for employees at all White Noise Coffee Co. locations.

30.     During the relevant time period, Defendants maintained one set of records showing hours worked at both the Brooklyn location and the Manhattan location.

31.     The Corporate Defendants have jointly regulated the employment of all persons employed by them, acted directly and indirectly in the companies' interest in relation to the employees, and thus are employers of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

*Defendants Su Hyung Kim a/k/a Vanesa Kim and Han Flanagan Jointly Oversee the Operations of the Corporate Defendants*

32.     Together, Defendants Kim and Flanagan are and during the relevant time period were responsible for the day-to-day operation and management of the Corporate Defendants.

33.     Defendants Kim and Flanagan currently oversee and during the relevant time period

oversaw operations of the Brooklyn location and the Manhattan location.

34.    Prior to the closure of the Queens location, Defendants Kim and Flanagan also oversaw operations of the Queens location.

35.    For example, the White Noise Coffee Co. Instagram account refers to Defendant Kim as "Boss Vanesa" in a December 31, 2023 post.

36.    The same December 31, 2023 White Noise Coffee Co. Instagram post refers to Defendant Flanagan as "Partner in crime Han [sic] our behind the scenes mastermind."

37.    Together, Defendants Kim and Flanagan are and during the relevant time period were in financial control of all the Corporate Defendants.

38.    During the relevant time period, Defendant Kim had the power to make all significant financial decisions with regard to the Corporate Defendants.

39.    During the relevant time period, Defendant Flanagan had the power to make significant financial decisions with regard to the Corporate Defendants.

40.    During the relevant time period, Defendants Kim and Flanagan advised news publications that they operate multiple White Noise Coffee Co. locations.

41.    For example, a May 13, 2024 article published by NY City NewsService reported that Defendants Kim and Flanagan operate White Noise Coffee Co. locations in Boerum Hill, Brooklyn, and in Hell's Kitchen, Manhattan.

42.    As another example, Defendant Kim wrote an article that was published on the website Entrepreneur.com on November 26, 2022 and in the December 2022 issue of Entrepreneur magazine with the title, "No One Would Rent Me a Café in Trendy NYC Neighborhoods, So I Tried Something Risky. Now I Have Three Coffee Shops [referencing the Manhattan location, the Brooklyn location, and the Queens location]," and the subtitle, "To get White Noise Cofee [sic]

Co. off the ground, I had to believe that if I built my dream café, they would come…. [sic] wherever it was."

43.    As another example, a March 25, 2022 article published by amNY reported that Defendant Kim at the time of publication operated White Noise Coffee Co. locations in Manhattan, Brooklyn, and Queens.

44.    During the relevant time period, Defendant Kim had the power to hire employees at all three White Noise Coffee Co. locations.

45.    During the relevant time period, Defendant Flanagan had the power to hire employees at all three White Noise Coffee Co. locations.

46.    During the relevant time period, Defendant Kim hired White Noise Coffee Co.'s employees for all three White Noise Coffee Co. locations.

47.    During the relevant time period, Defendant Flanagan hired White Noise Coffee Co.'s employees for all three White Noise Coffee Co. locations.

48.    During the relevant time period, Defendant Kim had the power to fire White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

49.    During the relevant time period, Defendant Flanagan had the power to fire White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

50.    During the relevant time period, Defendant Kim had the power to set the rates of pay for White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

51.    During the relevant time period, Defendant Flanagan had the power to set the rates of pay for White Noise Coffee Co.'s employees all three White Noise Coffee Co. locations.

52.    During the relevant time period, Defendant Kim set the rates of pay for White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

53.     During the relevant time period, Defendant Kim had the power to set the work schedules of White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

54.     During the relevant time period, Defendant Kim set the work schedules of White Noise Coffee Co.'s employees at all three White Noise Coffee Co. locations.

55.     During the relevant time period, Defendant Kim prepared and processed paychecks for all employees at all White Noise Coffee Co. locations.

56.     During the relevant time period, Defendant Kim had authority to sign checks, including payroll checks, on behalf of the Corporate Defendants for all three White Noise Coffee Co. locations.

57.     During the relevant time period, Defendant Kim signed the paychecks of White Noise Coffee Co.'s employees for all three White Noise Coffee Co. locations.

58.     During the relevant time period, Defendant Kim distributed paychecks to White Noise Coffee Co.'s employees.

59.     During the relevant time period, Defendant Flanagan distributed paychecks to White Noise Coffee Co.'s employees.

60.     During the relevant time period, Defendant Kim had authority to supervise employees of White Noise Coffee Co. at all three White Noise Coffee Co. locations.

61.     During the relevant time period, Defendant Flanagan had authority to supervise employees of White Noise Coffee Co. at all three White Noise Coffee Co. locations.

62.     During the relevant time period, Defendant Kim supervised White Noise Coffee Co. employees at all three White Noise Coffee Co. locations.

63.     During the relevant time period, Defendant Flanagan supervised White Noise Coffee Co. employees at all three White Noise Coffee Co. locations.

64. During the relevant time period, Defendant Kim typically visited White Noise Coffee Co.'s locations on a daily basis.

65. During the relevant time period, Defendant Flanagan typically visited White Noise Coffee Co.'s locations on a daily basis.

66. During the relevant time period, Defendant Kim gave instructions to White Noise Coffee Co.'s employees regarding their duties at all three White Noise Coffee Co. locations.

67. During the relevant time period, Defendant Flanagan gave instructions to White Noise Coffee Co.'s employees regarding their duties all three White Noise Coffee Co. locations.

68. Defendant Kim has regulated the employment of all persons she has employed and has acted directly and indirectly in the Corporate Defendants' interests in relation to the employees.

69. Defendant Kim is thus an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

70. Defendant Flanagan has regulated the employment of all persons he has employed and has acted directly and indirectly in the Corporate Defendants' interests in relation to the employees.

71. Defendant Flanagan is thus an employer of the Corporate Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

### THE CORPORATE DEFENDANTS ARE AN ENTERPRISE ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

72. Together, the Corporate Defendants are an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

73. The Corporate Defendants' business activities are related and performed through

common control for a common business purpose.

74.    The Corporate Defendants engage in the common business purpose of jointly operating a chain of specialty coffee shops under one unified brand – White Noise Coffee Co.

75.    In pursuing this common business purpose, each Corporate Defendant engages in substantially similar, if not identical, business activities.

76.    The Corporate Defendants have unified operations.

77.    Defendants hold White Noise Coffee Co. out as a single business that currently operates the Brooklyn and Manhattan locations and that formerly operated the Queens location, and have done so throughout the relevant time period.

78.    Defendants maintain a single website for White Noise Coffee Co., https://whitenoisecoffee.com/, and have done so throughout the relevant time period.

79.    The White Noise Coffee Co. website, under a page titled "Locations," currently lists the Brooklyn location and the Manhattan location.

80.    The White Noise Coffee Co. website previously also listed the Queens location as another White Noise Coffee Co. location as recently as February 28, 2024.

81.    Defendants maintain a single Instagram account for White Noise Coffee Co. with the handle @whitenoisecoffeeco, and have done so throughout the relevant time period.

82.    The White Noise Coffee Co. Instagram account states on its main profile that White Noise Coffee Co. is a specialty coffee shop with locations at 829 11th Avenue in New York and 57 Smith Street in Brooklyn, which are the Manhattan location and the Brooklyn location, respectively.

83.    The White Noise Coffee Co. Instagram account also features a highlight reel on its main profile titled "#queens," which features photos and videos taken at White Noise Coffee Co.'s

former Queens location.

84.     On June 1, 2023, the White Noise Coffee Co. Instagram account made a post which stated in the caption, "It is a [sic] very heavy heart that we share our decision to close our flushing [sic] location and relocate. . . . In the meantime [sic] stop by our other 2 locations in Brooklyn and Hells [sic] Kitchen."

85.     On December 31, 2023, the White Noise Coffee Co. Instagram account made a post which stated in the caption, "It has been a momentous year for us. . . . We closed the doors of our flushing [sic] location while revamping our Brooklyn and Manhattan cafes."

86.     White Noise Coffee Co. currently offers and during the relevant time period offered the same or substantially similar food and drink menu items at both the Manhattan location and the Brooklyn location.

87.     Prior to the closure of the Queens location, White Noise Coffee Co. also offered the same or substantially similar food and drink menu items at the Queens location as they offered at the Manhattan location and the Brooklyn location.

88.     During the relevant time period, Defendants employed the same employees at multiple White Noise Coffee Co. locations.

89.     As described herein, the Corporate Defendants' business activities are performed under common control.

90.     A common management team, including Defendants Kim and Flanagan, are in common control of the Corporate Defendants and exercise control over the Corporate Defendants' operations.

91.     During the relevant time period, Defendants' employees were under the common management of Defendants Kim and Flanagan regardless of the White Noise Coffee Co. location

at which they performed work in a given week.

92.     The White Noise Coffee Co. Brooklyn location had an annual gross volume of sales made or business done in an amount not less than $500,000 during the relevant time period.

93.     The White Noise Coffee Co. Manhattan location had an annual gross volume of sales made or business done in an amount not less than $500,000 since it opened on or around March 23, 2022 through the relevant time period.

94.     Upon information and belief, the White Noise Coffee Co. Queens location had an annual gross volume of sales made or business done in an amount not less than $500,000 during the relevant time period until it closed on or around June 1, 2023.

95.     The Corporate Defendants thus had an annual gross volume of sales made or business done in an amount not less than $500,000 for the period covered by this Complaint.

96.     Defendants employed the employees listed in Exhibit A, as well as other employees not presently known to Plaintiff, in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including the handling of, selling of, or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to coffee beans.

97.     Therefore, Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

**DEFENDANTS FAILED TO PAY PREMIUM PAY FOR OVERTIME HOURS WORKED**

98.     During the relevant time period, Defendants employed employees in their coffee shop locations who performed work such as taking customer orders, preparing coffee drinks, and preparing food.

99. During the relevant time period, Defendants paid most of the White Noise Coffee Co. employees at an hourly rate of pay of $15.00 to $18.00 per hour.

100. During the relevant time period, at least some of the White Noise Coffee Co. employees regularly worked at more than one White Noise Coffee Co. location in the same workweek.

101. Before Defendants closed the Queens location on or around June 1, 2023, some White Noise Coffee Co. employees regularly worked at both the Queens location and at least one other White Noise Coffee Co. location in the same workweek.

102. After Defendants opened the Manhattan location on or around March 23, 2022 but before Defendants closed the Queens location on or around June 1, 2023, some White Noise Coffee Co. employees regularly worked at all three White Noise Coffee Co. locations in the same workweek.

103. After Defendants opened the Manhattan location on or around March 23, 2022, some White Noise Coffee Co. employees regularly worked at both the Manhattan and Brooklyn locations in the same workweek.

104. The White Noise Coffee Co. employees who regularly worked at both the Queens location and at least one other White Noise Coffee Co. location regularly worked at least 52 hours per week across multiple locations.

105. The White Noise Coffee Co. employees who regularly worked at both the Manhattan and Brooklyn locations in the same week at times worked between 40 and 50 hours per week between the two locations.

106. However, when White Noise Coffee Co. employees worked at more than one White Noise Coffee Co. location in the same workweek, Defendants did not aggregate employees' hours

worked at all locations.

107.    Instead, Defendants provided White Noise Coffee Co. employees who worked at multiple White Noise Coffee Co. locations in the same workweek with a separate paycheck for each location at which the employees worked, with each paycheck reflecting straight time pay for fewer than 40 hours worked in the workweek.

108.    For example, three employees regularly worked 38 hours per week at one location, plus at least 14 hours per week at one or more other locations, for a total of at least 52 hours, and were paid on an hourly basis. Defendants issued these employees separate paychecks for the hours worked at each location, with no overtime premium for hours worked over 40.

109.    As another example, Defendants' set of records for the Manhattan location and the Brooklyn location reveal an employee worked 30.35 hours at the Manhattan location and 16.92 hours at the Brooklyn location in the week ending August 21, 2022, for a total of 47.27 hours. These records also indicate that 40 of the hours worked in the week were "[r]egular hours," that 7.27 of the hours worked in the week were "[o]vertime hours," and that Defendants accrued a "[r]egular labor cost" for the employee in that week of $600.00 and an "[o]vertime labor cost" for the employee in that week of $163.50. The employee's regular rate of pay was thus $15.00 per hour ($600.00 divided by 40 hours) and their overtime rate was $22.50 ($163.50 divided by 7.27 overtime hours).

110.    Nonetheless, Defendants failed to pay what their records said they paid ($600.00 plus $163.50), instead paying that employee with two separate checks - one for 30.35 hours of work and one for 16.92 hours of work, both at straight time hourly rates without an overtime premium for overtime hours worked.

111.    As another example, Defendants' set of records for the Manhattan location and the

Brooklyn location show that an employee worked 19.55 hours at the Manhattan location and 26.07 hours at the Brooklyn location in the week ending October 2, 2022, for a total of 45.62 hours. Defendants' records also indicate that 40 of the hours worked in the week were "[r]egular hours," that 5.62 of the hours worked in the week were "[o]vertime hours" and that Defendants accrued a "[r]egular labor cost" for the employee in that week of $600.00 and an "[o]vertime labor cost" for the employee in that week of $126.38. The employee's regular rate of pay was thus $15.00 per hour ($600.00 divided by 40 hours) and their overtime rate was $22.50 ($126.38 divided by 5.62 overtime hours).

112.    Here, again, Defendants failed to aggregate the hours the employee worked at the two locations and failed to pay the employee $726.38 ($600.00 plus $126.38). Instead, Defendants paid that employee with two separate checks - one for 19.55 hours of work and one for 26.07 hours of work, both at straight time hourly rates without an overtime premium for overtime hours worked.

113.    Additionally, during the relevant time period, at least one White Noise Coffee Co. employee regularly worked at least 42-45 hours per week and Defendants paid that employee a weekly salary of $800.00, with no overtime premium for hours worked over 40.

114.    Accordingly, Defendants did not pay their employees the required overtime premium of one and one half times their regular rate of pay for hours worked in excess of 40 in a workweek.

**DEFENDANTS FAILED TO MAKE AND MAINTAIN ACCURATE RECORDS**

115.    During the relevant time period, Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

116.    For example, Defendants failed to maintain or preserve any records whatsoever concerning the hours worked by employees at the Queens location.

117.    Defendants also failed to maintain or preserve any records whatsoever concerning the rate of pay or the wages paid to employees for work at the Queens location.

118.    During the relevant time period, Defendants kept some records of hours worked by and wages paid to employees who worked at the Manhattan location and Brooklyn location.

119.    However, the records Defendants kept for these locations do not accurately reflect the wages paid to employees.

120.    Specifically, as described above, Defendants falsely indicated in the set of records they kept for the Manhattan location and the Brooklyn location that they aggregated hours between those two locations and paid the proper overtime premiums to employees who worked over 40 hours per week across those two locations.

121.    During the relevant time period, Defendants also failed to make or maintain records containing the names and contact information of all of the White Noise Coffee Co. employees.

122.    During the relevant time period, Defendants failed to make or maintain records showing the day of the week on which each White Noise Coffee Co. employee's workweek began.

123.    During the relevant time period, Defendants failed to make or maintain any records showing the regular hourly rate of pay for each White Noise Coffee Co. employee.

124.    During the relevant time period, Defendants failed to make or maintain any records showing the total hours worked each workweek for each White Noise Coffee Co. employee.

125.    During the relevant time period, Defendants failed to make or maintain any records showing total straight-time earnings for non-overtime hours worked for each White Noise Coffee Co. employee.

126. During the relevant time period, Defendants failed to make or maintain any records showing the additions to or deductions from wages paid in each pay period for each White Noise Coffee Co. employee.

127. During the relevant time period, Defendants failed to make or maintain any records showing the total wages paid to each White Noise Coffee Co. employee in each pay period.

128. During the relevant time period, Defendants failed to make or maintain any records showing the date of payment and the pay period covered by each payment made to each White Noise Coffee Co. employee.

129. During the relevant time period, Defendants failed to post a notice explaining the Act in conspicuous places in every White Noise Coffee Co. location.

### DEFENDANTS' VIOLATIONS WERE WILLFUL

130. During the relevant time period, Defendants knew and understood the FLSA's overtime and record-keeping requirements.

131. As described herein, Defendants designed their pay and recordkeeping practices to falsely simulate compliance with the Act.

132. For example, as indicated above, Defendants' set of records for the Manhattan location and the Brooklyn location reveal an employee worked 30.35 hours at the Manhattan location and 16.92 hours at the Brooklyn location in the week ending August 21, 2022, for a total of 47.27 hours, of which 7.27 were "[o]vertime hours." Defendants' records falsely indicate that they paid the employee for the overtime hours at the proper overtime rate of one and one half times the regular hourly rate of pay, demonstrating their awareness of the FLSA's overtime requirements.

133. Despite this awareness of the FLSA's overtime requirements, Defendants failed to

pay the employee at the proper overtime rate for overtime hours in that week, instead paying that employee with two separate checks – one for 30.35 hours of work and one for 16.92 hours of work – both at straight time hourly rates without an overtime premium for overtime hours worked.

134.     As another example, and also as indicated above, Defendants' set of records for the Manhattan location and the Brooklyn location show that an employee worked 19.55 hours at the Manhattan location and 26.07 hours at the Brooklyn location in the week ending October 2, 2022, for a total of 45.62 hours, of which 5.62 were "[o]vertime hours." Defendants' records falsely indicate that they paid the employee for the overtime hours at the proper overtime rate of one and one half times the regular hourly rate of pay, demonstrating their awareness of the FLSA's overtime requirements.

135.     Yet here, again, Defendants failed to pay the employee at the proper overtime rate for overtime hours in that week, instead paying that employee with two separate checks – one for 19.55 hours of work and one for 26.07 hours of work – both at straight time hourly rates without an overtime premium for overtime hours worked.

136.     In sum, Defendants' records demonstrate that they were aware of the FLSA's requirement to pay an overtime premium of one and one half times the regular rate of pay for hours worked over 40 across multiple locations, but chose not to do so.

**FIRST CAUSE OF ACTION**
**Violation of Sections 7(a) and 15(a)(2) of the FLSA**
**Failure to Pay Overtime**

137.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Acting Secretary adopts and incorporates by reference the allegations in all prior paragraphs.

138.     Defendants willfully have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods

for commerce for workweeks longer than forty hours without compensating the employees for their employment in excess of forty hours at rates not less than one and one half times the regular rates at which they were employed, as required by Section 7 of the Act.

139.    Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

**SECOND CAUSE OF ACTION**
**Violation of Sections 11(c) and 15(a)(5) of the FLSA**
**Failure to Make, Keep, and Preserve Adequate and Accurate Records**

140.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, the Acting Secretary adopts and incorporates by reference the allegations in all prior paragraphs.

141.    Defendants willfully have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.

142.    More specifically, Defendants failed to maintain or preserve any records whatsoever concerning employees' hours worked, rates of pay, and wages paid to employees at the White Noise Coffee Co. Queens location.

143.    Defendants also failed to make or maintain accurate records reflecting wages paid to employees who worked at the White Noise Coffee Co. Manhattan and Brooklyn locations.

144.    Defendants also failed to make or maintain records containing the names and contact information of all of the White Noise Coffee employees.

145.    Additionally, Defendants failed to make or maintain records of the day of the week

on which employees' workweeks began; employees' regular hourly rates of pay; total hours worked; total straight-time earnings for non-overtime hours worked; total deductions, if any, from employee pay; total wages paid; and date of payment and pay period covered by each payment for all employees who worked at any of the White Noise Coffee Co. locations.

146.    Defendants also failed to post a notice explaining the Act in conspicuous places at every White Noise Coffee Co. location.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concert or participation with Defendants, from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount of unpaid overtime compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Acting Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.


DATED:        September 20, 2024

                                        SEEMA NANDA
                                        Solicitor of Labor

                                        JEFFREY S. ROGOFF
                                        Regional Solicitor


                          BY:    /s/ Amanda M. Wilmsen
                                        AMANDA M. WILMSEN
                                        Trial Attorney

                                        U.S. Department of Labor,
                                        *Attorneys for Plaintiff Acting Secretary of Labor*

                                        U.S. Department of Labor
                                        Office of the Regional Solicitor
                                        201 Varick Street, Room 983
                                        New York, NY 10014
                                        (646) 264-3691
                                        (646) 264-3660 (fax)
                                        wilmsen.amanda.m@dol.gov
                                        NY-SOL-ECF@dol.gov

## EXHIBIT A

Vincent Chen
Kyle Chhe
Mariano Feng
Tony Feng
Angela Jiang
Max Kimmelman
Christy Nguyen